UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

TAMPA DIVISION

NYGEL HARRIS,

     Petitioner,

v.                                        Case No. 8:18-cv-2067-KKM-TGW

SECRETARY, DEPARTMENT

OF CORRECTIONS,

     Respondent.

_____/

## ORDER

Nygel Harris, a Florida prisoner, filed a timely[1] Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. (Doc. 1.) Having considered the petition (*id.*), the response in opposition (Doc. 11), and Harris's reply (Doc. 18), it is ordered that the petition is denied. Furthermore, a certificate of appealability is not warranted.

---

[1] A state prisoner has one year from the date his judgment becomes final to file a § 2254 petition. *See* § 2244(d)(1). This one-year limitations period is tolled during the pendency of a properly filed state postconviction motion. *See* § 2244(d)(2). The state appellate court affirmed Harris's convictions and sentences on June 12, 2015. Harris's judgment became final on September 10, 2015, upon expiration of the 90-day window to petition the United States Supreme Court for a writ of certiorari. *See Bond v. Moore*, 309 F. 3d 770 (11th Cir. 2002). After 251 days of untolled time elapsed, Harris filed a petition alleging ineffective assistance of appellate counsel under Florida Rule of Appellate Procedure 9.141 on May 19, 2016. That petition remained pending until the denial of his motion for rehearing on March 31, 2017. Another 93 days of untolled time passed before Harris filed his motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 on July 3, 2017. The postconviction motion was pending until the August 8, 2018 issuance of the appellate court's mandate. Another seven days of untolled time passed before Harris filed his § 2254 petition on August 16, 2018. A total of 351 days of untolled time elapsed, and Harris's petition is timely.

# I. BACKGROUND

## A. Procedural History

The State of Florida charged Harris with numerous drug-related offenses based on various undercover sales on dates ranging from October to December 2012. The State alleged that, on October 10, 2012, Harris committed possession of cocaine within a 1,000 feet of a church with intent to sell (count one); sale of cocaine within a 1,000 feet of a church (count two); possession of cannabis within a 1,000 feet of a church with intent to sell (count three); and sale of cannabis within a 1,000 feet of a church (count four). (Doc. 12-2, Ex. 1, Vol. 1, appellate record pp. 23-24.)

The State alleged that on November 8, 2012, Harris committed possession of cocaine within a 1,000 feet of a church with intent to sell (count five); sale of cocaine within 1,000 feet of a church (count six); possession of cannabis within a 1,000 feet of a church with intent to sell (count seven); and sale of cannabis within a 1,000 feet of a church (count eight). (*Id.*, appellate record pp. 24-25.)

The State alleged that on December 5, 2012, Harris committed possession of cocaine within a 1,000 feet of a church with intent to sell (count nine); sale of cocaine within 1,000 feet of a church (count ten); trafficking in oxycodone (count eleven); and possession of drug paraphernalia (count twelve). (*Id.*, appellate record pp. 25-26.) Finally, the State alleged that between October 10, 2012, and December 5, 2012, Harris was in

actual or constructive possession of a structure used for trafficking, sale, or manufacture of controlled substances (count thirteen). (*Id.*, appellate record p. 26.)

Because the recovered substances were not tested, the State dismissed counts five, six, nine, and ten (the charges of possession of cocaine with intent to sell within 1,000 feet of a church and sale of cocaine within 1,000 feet of a church on November 8, 2012, and December 5, 2012). (*Id.*, appellate record pp. 43-44.) At trial, the state court granted Harris's motion for judgment of acquittal on counts three and four (the charges of possession of cannabis with intent to sell within a 1,000 feet of church and sale of cannabis within a 1,000 feet of a church on October 10, 2012) because the State did not prove that Harris was the person who committed those offenses. (Doc. 12-2, Ex. 1, Vol. 2, trial transcript pp. 221-22.)

The remaining counts were possession of cocaine within a 1,000 feet of a church with intent to sell on October 10, 2012 (count one); sale of cocaine within a 1,000 feet of a church on October 10, 2012 (count two); possession of cannabis within a 1,000 feet of a church with intent to sell on November 8, 2012 (count seven); sale of cannabis within a 1,000 feet of a church on November 8, 2012 (count eight); trafficking in oxycodone on December 5, 2012 (count eleven); possession of drug paraphernalia (count twelve); and actual or constructive possession of a structure used for trafficking, sale, or manufacture of controlled substance (count thirteen). A state court jury convicted Harris of the remaining

counts. (Doc. 12-2, Ex. 1, Vol. 1, appellate record pp. 107-08.) The state trial court sentenced Harris to a total of 25 years in prison. (*Id.*, appellate record pp. 116-26.) The state appellate court per curiam affirmed the convictions and sentences. (Doc. 12-3, Ex. 4.)

Harris filed a petition alleging ineffective assistance of appellate counsel under Florida Rule of Appellate Procedure 9.141. (Doc. 12-3, Ex. 5.) The state appellate court denied the petition. (Doc. 12-3, Ex. 8.) Harris then filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Doc. 12-3, Ex. 11, appellate record pp. 9-28.) The state court denied relief except that it permitted amendment of the costs of prosecution charged to Harris. (*Id.*, appellate record pp. 29-60, 127-66.) The state appellate court per curiam affirmed the ruling.  (Doc. 12-3, Ex. 13.)

B. Facts[2]

A confidential source (CS) assisted law enforcement in arranging undercover drug purchases from Harris at an apartment in Lake Wales, Florida. At an October 10, 2012 police briefing, Detective Keith Hubbard was assigned to purchase crack cocaine from Harris and was shown a photograph of him. (Doc. 12-2, Ex. 1, Vol. 2, transcript p. 106.) Detective Hubbard and the CS both went into the apartment. (*Id.*, transcript pp. 107-08.) Inside, Detective Hubbard met with a person whom he immediately recognized from the

---

[2] The facts derive from the trial transcript unless otherwise cited.

photograph as Harris. (*Id.*, transcript p. 108.) Harris sold Detective Hubbard crack cocaine for $100. (*Id.*, transcript p. 109.) An unknown male who was present in the apartment sold the CS $30 worth of cannabis. (*Id.*, transcript pp. 109-10.) Afterwards, Detective Hubbard and CS met with Detective Emmanuel Figueroa and gave him the drugs. (*Id.*, transcript p. 116.)

On November 8, 2012, Detective Hubbard was assigned to buy $100 worth of crack cocaine and $20 worth of cannabis from Harris. (*Id.*, transcript p. 117.) When Detective Hubbard and the CS arrived at the apartment, an unknown male opened the door and said that Harris was not home but should be back shortly. (*Id.*, transcript pp. 117-18.) Detective Hubbard and the CS left the apartment, returning after Harris called Detective Hubbard and said he was back. (*Id.*, transcript, p. 118.) Inside the apartment, Detective Hubbard purchased $100 of crack cocaine and $20 of cannabis from Harris. (*Id.*, transcript pp. 118-19.) Detective Hubbard gave the drugs to Detective Figueroa. (*Id.*, transcript p. 119.)

On December 5, 2012, at a police briefing, Detective Hubbard was assigned to purchase $100 worth of crack cocaine and $400 worth of oxycodone from Harris. (*Id.*, transcript pp. 120-21.) When he got to the apartment, Detective Hubbard told Harris that he wanted to buy $100 worth of crack cocaine and wanted to buy 50 pills of oxycodone. (*Id.*, transcript pp. 121-22.) They conducted the crack cocaine deal, but Harris said he had to leave to get the pills. (*Id.*, transcript p. 122.)

Detective Hubbard also left the apartment; he returned after Harris called him. (*Id.*) When Detective Hubbard re-entered the apartment, Harris was sitting in a chair with a baggie of pills. (*Id.*) Harris counted out 50 pills and put them in a plastic bag, and Detective Hubbard handed him $400. (*Id.*, transcript p. 123.) Harris offered to sell Detective Hubbard another "handful" of pills for $50, but Detective Hubbard said he had no more money. (*Id*, transcript pp. 123-24.) Harris gave Detective Hubbard the pills. (*Id.*, transcript p. 124.) Afterwards, Detective Hubbard gave the drugs to Detective Figueroa. (*Id.*)

At trial, the prosecution played audio recordings of the three transactions. (*Id.*, transcript pp. 114-15, 125-27, 153-54.) Richard Horvat, a crime lab analyst for the Florida Department of Law Enforcement (FDLE), tested some of the substances. He found that State's Exhibit One, from the October 10, 2012 transaction, contained cocaine. (*Id.*, transcript pp. 111, 203-07.) Horvat determined that State's Exhibit Twelve, the pills from the December 5, 2012 transaction, contained oxycodone, and weighed 56.3 grams. (*Id.*, transcript pp. 124, 203-07.) Horvat did not test the cannabis that was recovered on November 8, 2012, which led to the State charging counts seven and eight. Detectives Hubbard and Figueroa both testified that they had extensive experience observing cannabis in their work and that the substance recovered was cannabis. (*Id.*, transcript pp. 103-04, 119-20, 157, 167-69.)

Detective Figueroa measured the distance between the door of the apartment and the door of a church to be 604.2 feet. (*Id.*, transcript pp. 173-74.) The pastor of the church, Ira McCloud, testified that the church was active between the months of October and December 2012, and that approximately 50 families attended the church. (*Id.*, p. 197.) He testified that the church was established in 2006 and meets every week. (*Id.*, pp. 198-99.)

## II. <u>STANDARDS OF REVIEW UNDER SECTION 2254</u>

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief under the AEDPA can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of § 2254(d)(1), a decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme]

7

Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). The phrase "clearly established Federal law" encompasses the holdings only of the United States Supreme Court "as of the time of the relevant state-court decision." *Id.* at 412. A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

For purposes of § 2254(d)(2), a state court's findings of fact are presumed correct. *See Rolling v. Crosby*, 438 F.3d 1296, 1301 (11th Cir. 2006) ("The factual findings of the state court, including the credibility findings, are presumed to be correct . . . ."). A petitioner can rebut the presumption of correctness afforded to a state court's factual findings only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694. As a result, to obtain relief under the AEDPA, "a state prisoner must show that the state court's ruling on the claim being

presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (stating that "[t]he state court's application of clearly established federal law must be objectively unreasonable" for a federal habeas petitioner to prevail and that the state court's "clear error" is insufficient).

When the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons as stated in the opinion and defers to those reasons if they are reasonable. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). When the relevant state-court decision is not accompanied with reasons for the decision—such as a summary affirmance without discussion—the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Id.* The state may contest "the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision . . . ." *Id.*

In addition to satisfying the deferential standard of federal court review of a state court adjudication, a federal habeas petitioner must exhaust his claims by raising them in state court before presenting them in a federal petition. *See* 28 U.S.C. § 2254(b)(1)(A);

*O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). A petitioner satisfies this exhaustion requirement if he fairly presents the claim in each appropriate state court and alerts that court to the federal nature of the claim. *Ward v. Hall*, 592 F.3d 1144, 1156 (11th Cir. 2010).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). A petitioner shows cause for a procedural default when he demonstrates "that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). A petitioner demonstrates prejudice by showing that "there is at least a reasonable probability that the result of the proceeding would have been different" absent the constitutional violation. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). "A 'fundamental miscarriage of justice' occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Id.*

## III. INEFFECTIVE ASSISTANCE OF COUNSEL STANDARD

Harris brings several claims for ineffective assistance of counsel under the Sixth Amendment. Under the well-known, two-part standard articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), to succeed, he must show both deficient performance by his counsel and prejudice resulting from those errors. *Id.* at 687.

The first part "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* The lynchpin of this analysis is whether counsel's conduct "was reasonable considering all the circumstances." *Id.* at 688. A petitioner establishes deficient performance if "the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. A court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

The second part requires showing that the deficient performance prejudiced the defense. *Id.* at 687. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To demonstrate prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would

have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

The *Strickland* standard applies to claims of ineffective assistance of appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991). To establish a claim of ineffective assistance of appellate counsel, Harris must show that appellate counsel's performance was objectively unreasonable, and that there is a reasonable probability that, but for this performance, he would have prevailed on his appeal. *Robbins*, 528 U.S. at 285-86.

"The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Consequently, federal petitioners rarely prevail on claims of ineffective assistance of counsel because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (quotation and citations omitted).

## IV. <u>ANALYSIS</u>

### A. Ground One, Sub-Claim One: Sufficiency of the Evidence

Harris argues that the State presented insufficient evidence of count thirteen, possession of a structure used for trafficking, selling, or manufacturing controlled substances. He claims a violation of his rights under the Fifth, Sixth, and Fourteenth Amendments.

Respondent argues that Harris's sufficiency of the evidence claim is unexhausted because he did not fairly present it as a federal claim on direct appeal. Respondent is correct that Harris did not raise his sufficiency of the evidence claim as a federal claim on direct appeal and instead brought the claim under state law. (Doc. 12-3, Ex. 2, pp. 8-10.) Nonetheless, because the Eleventh Circuit has not squarely held that a petitioner cannot exhaust a federal sufficiency of the evidence claim by bringing an identical state claim in state court, *see Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 459-60 (11th Cir. 2015),[3] the Court will presume that Harris exhausted his federal constitutional challenge to the sufficiency of the evidence .

Under the Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), a court reviewing a challenge to the sufficiency of the evidence must evaluate whether, after viewing the evidence in the light most favorable to the prosecution, any

---

[3] The Eleventh Circuit in *Preston* noted that "it is not at all clear that a petitioner can exhaust a federal claim by raising an analogous state claim." *Id.* at 460. And this Court agrees it is "surpassing strange" to conclude that a state court reached a decision "contrary to, or involved an unreasonable application of" clearly established federal law when the petitioner never pressed that federal law as the basis for his relief. *Id.* But this Court need not decide that issue in this case because Harris's claim fails even with the assumption it is properly exhausted.

rational juror could have found proof of guilt beyond a reasonable doubt. The *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16. Under *Jackson*, the prosecution does not have "an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt." *Id.* at 326. If the record contains facts supporting conflicting inferences, the jury is presumed to have resolved those conflicts in favor of the prosecution and against the defendant. *Id.*

Consistent with the AEDPA, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)).

Harris has not shown that the state court unreasonably denied his claim. To establish the offense, the State had to prove beyond a reasonable doubt that (1) Harris was in actual or constructive possession of a building, place, or structure; and (2) Harris knew that the place, structure, or a part thereof would be used for the purpose of trafficking, sale, or manufacture or a controlled substance intended for sale or distribution to another. (Doc. 12-2, Ex. 1, Vol. 1, appellate record p. 93); *see also* § 893.1351(2), Fla. Stat. The State was not required to show that such activity was the principal use of the property; it was sufficient

to prove that the property was used "at frequent intervals" as a place or means for such activity. (Doc. 12-2, Ex. 1, Vol. 1, appellate record p. 93.) The State was also not required to prove that Harris wholly owned or controlled the property. (*Id.*)

The State presented evidence that Harris sold controlled substances from inside the apartment on three occasions over the course of a little less than two months. Viewing that evidence in the light most favorable to the State, a reasonable jury could conclude that Harris had possession of the apartment and knowingly used the apartment for the purpose of selling or trafficking in controlled substances. Although others were present in the apartment each day (*see* Doc. 12-2, Ex. 1, Vol. 2, transcript pp. 109-10, 117-18 141-42), there is no requirement in Florida law that Harris have *exclusive* control over the apartment.

Harris fails to show that no rational juror, viewing the evidence in the light most favorable to the prosecution, could find proof of guilt beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. And therefore he does not show that the state court's denial of his claim was contrary to, or involved an unreasonable application of, clearly established federal law. Nor does he show that the state court's decision was based on an unreasonable factual determination. Therefore, Harris is not entitled to federal habeas relief on Ground One, Sub-Claim One.

### B. Ground One, Sub-Claim Two, Ground Two, and Ground Three: Procedurally Barred From Federal Habeas Review

In Ground One, Sub-Claim Two, Harris argues in the alternative to his sufficiency of the evidence claim that the trial court's failure to instruct the jury on the "essential and disputed element of actual or constructive possession" of the structure was fundamental error. (Doc. 1, p. 6.) In Ground Two, Harris contends that the trial court erred in allowing the introduction of State's Exhibits 7 and 8, which were cannabis. In Ground Three, Harris argues that the trial court erred in excluding evidence about a search warrant executed at the apartment after his arrest. Harris claims violations of his rights under the Fifth, Sixth, and Fourteenth Amendments.

Respondent contends that these claims are unexhausted because Harris did not present them as federal claims in state court. A review of Harris's appellate brief shows that he only presented these claims under state law. (Doc. 12-3, Ex. 2, pp. 10-14.) Harris did not assert a violation of his federal rights or support his claims with federal authority. (*Id.*) Harris's failure to raise the claims' federal nature leaves the exhaustion requirement unsatisfied. *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) ("If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution."); *Preston*, 785 F.3d at 457 ("The crux of the exhaustion requirement is simply that the petitioner must have put the state court on notice that he intended to raise

a federal claim."); *Pearson v. Sec'y, Dep't of Corr.*, 273 F. App'x 847, 849-50 (11th Cir. 2008) ("The exhaustion doctrine requires the petitioner to 'fairly present' his federal claims to the state courts in a manner to alert them that the ruling under review violated a federal constitutional right.").

Harris cannot return to state court to bring the federal claims in a second direct appeal. *See* Fla. R. App. P. 9.140(b)(3) (stating that an appeal must be taken within 30 days of the imposition of sentence). Accordingly, Harris's claims are procedurally defaulted. *See Smith*, 256 F.3d at 1138. Harris has not established that an exception applies to overcome the default. Therefore, Grounds One, Sub-Claim One, Two, and Three are barred from federal habeas review.

### C. Ground Four: Ineffective Assistance Of Appellate Counsel
#### 1. Sub-Claim One

Harris argues that appellate counsel was ineffective for failing to argue that the trial court erred in denying his motion to sever the counts for trial. Trial counsel sought to "sever[ ] the counts from the different days." (Doc. 12-2, Ex. 1, Vol. 1, appellate record p. 50.) Counsel argued that proceeding on all counts would prejudice Harris and prevent a fair trial. (*Id.*)

Harris raised this claim in his Rule 9.141 petition alleging ineffective assistance of appellate counsel. (Doc. 12-3, Ex. 5, pp. 12-21.) The state appellate court denied Harris's claim. (Doc. 12-3, Ex. 8.) Harris primarily argued that appellate counsel was ineffective

for not asserting that the trial court erred under state law. (Doc. 12-3, Ex. 5, pp. 12-21.) To the extent Harris's claim depends on this underlying question of state law, he cannot obtain federal habeas relief. The state appellate court held that if appellate counsel had raised the trial court error claim under the state law identified by Harris, the claim would have afforded Harris no relief on appeal.

This Court must defer to the state appellate court's application of state law. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[The United States Supreme Court has] repeatedly held that a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus."); *Pinkney v. Secretary, DOC*, 876 F.3d 1290, 1295 (11th Cir. 2017) ("[A]lthough 'the issue of ineffective assistance—even when based on the failure of counsel to raise a state law claim—is one of constitutional dimension,' [a federal court] 'must defer to the state's construction of its own law' when the validity of the claim that . . . counsel failed to raise turns on state law." (quoting *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984))); *Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) ("[T]he Alabama Court of Criminal Appeals has already answered the question of what would have happened had [petitioner's counsel] objected to the introduction of [petitioner's] statements based on [state law] – the objection would have been overruled. . . . Therefore, [petitioner's counsel] was not ineffective for failing to make that objection.").

Harris also contended that appellate counsel should have argued that the trial court's ruling violated his Fifth, Sixth, and Fourteenth Amendment rights. As an initial matter, it is not clear that any such argument was preserved for review because trial counsel did not allege a federal constitutional violation in her argument to the state trial court. (Doc. 12-2, Ex. 1, Vol. 1, appellate record pp. 50-51.) Harris has not demonstrated that appellate counsel was ineffective for not raising an unpreserved argument. *See, e.g.*, *Diaz v. Sec'y, Dep't of Corr.*, 402 F.3d 1136, 1142 (11th Cir. 2005) ("Under Florida law, an error that passed without objection cannot be raised on appeal; appellate counsel, therefore, is not ineffective for failure to raise a meritless argument."); *Atkins v. Singletary*, 965 F.2d 952, 957 (11th Cir. 1992) ("[A]ppellate counsel rendered effective assistance because he either properly argued Atkins' claims on appeal or he was prohibited from raising on appeal issues that had not been preserved for appeal at the trial level.").

Even assuming the claim was properly preserved for appeal and fairly presented a federal question, Harris does not show that the state appellate court unreasonably determined that appellate counsel was not ineffective for not raising it. "Improper joinder does not, in itself, violate the Constitution. Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." *United States v. Lane*, 474 U.S. 438, 446 n.8 (1986).

"On habeas corpus attack of the [s]tate [t]rial [c]ourt's denial of severance, '[t]he simultaneous trial of more than one offense must actually render petitioner's state trial fundamentally unfair and hence, violative of due process before relief pursuant to 28 U.S.C.A. § 2254 would be appropriate.'" *Alvarez v. Wainwright*, 607 F.2d 683, 685 (5th Cir. 1979) (quoting *Tribbitt v. Wainwright*, 540 F.2d 840, 841 (5th Cir. 1976)). "To find that a trial was rendered fundamentally unfair, we believe that [at] a minimum, appellant must demonstrate prejudice sufficient to warrant relief under F.R.Cr.P. 14 or its state counterpart in this case Fla.R.Cr.P. 3.152(a)(2)." *Id.*; *see also Demps v. Wainwright*, 666 F.2d 224, 227 (5th Cir. 1982) ("In order to justify relief under 28 U.S.C.A. § 2254, Demps must show that the refusal to sever rendered his state trial fundamentally unfair and violative of due process." (citing *Alvarez*, 607 F.2d 683); *Panzavecchia v. Wainwright*, 658 F.2d 337, 341 (5th Cir. 1981) ("The burden falls on the habeas petitioner [challenging the denial of a severance motion] to demonstrate an abuse of discretion and that the resulting prejudice was so material as to 'warrant relief under F.R.Cr.P. 14 or its state counterpart . . . Fla.R.Cr.P. 3.152(a)(2).'" (quoting *Alvarez*, 607 F.2d 683).

Rule 14, Federal Rules of Criminal Procedure, provides that "[i]f the joinder of offenses . . . appears to prejudice a defendant . . . , the court may order separate trials of counts . . . or provide any other relief that justice requires." Fed. R. Crim. P. 14(a); *see also United States v. Bowers*, 811 F.3d 412, 422 (11th Cir. 2016) ("For the denial of a motion

to sever to be error under Rule 14(a), a defendant must demonstrate that failure to sever 'result[ed] in compelling prejudice against which the district court could offer no protection.'" (quoting *United States v. Walser*, 3 F.3d 380, 385 (11th Cir. 1993)). In addition, under Rule 14, a trial court must weigh the prejudice of a joint trial against concerns of judicial economy, and the court's "decision on severance will be sustained unless a clear abuse is present." *Panzavecchia*, 658 F.2d at 341 (citing *United States v. Martino*, 648 F.2d 367, 385-86 (5th Cir. 1981)). "If severance is denied, the judge must utilize limiting instructions to cure the prejudicial effect of the joint trial."

The State argued in responding to counsel's motion to sever that evidence of the transaction(s) from each day was relevant to those on the other days because it established Harris's identity, as well as a pattern of conduct at the same location. In addition, the State argued that all transactions were relevant to proving count thirteen, possession of a structure, which was charged as having occurred between October 10 and December 5, 2012. (Doc. 12-2, Ex. 1, Vol. 1, appellate record pp. 50-51.) The trial court denied the motion after counsel acknowledged that identity was a significant issue in this case. (*Id.*, appellate record pp. 51-52.)

Harris does not show that his trial was rendered fundamentally unfair, thereby violating his federal constitutional right to due process, because the charges were tried together. As addressed above, the state court has already determined that Harris failed to

show that he was entitled to relief based on state law governing the severance of charges. *See Alvarez*, 607 F.2d at 685. Further, Harris fails to "demonstrate prejudice sufficient to warrant relief under F.R.Cr.P. 14." *Id*. Harris has not established that the denial of a severance resulted in "compelling prejudice against which the district court could offer no protection" in the light of the trial court's instruction that the jury must consider each count independent of the other counts. *See Bowers*, 811 F.3d at 422. The trial court instructed the jury:

> A separate crime is charged in each count of the information and, although they have been tried together, each crime and the evidence applicable to it must be considered separately and a separate verdict returned as to each. A finding of guilty or not guilty as to one crime must not affect your verdict as to the other crimes charged.

(Doc. 12-2, Ex. 1, Vol. 1, appellate record p. 104.) The jury is presumed to have followed this instruction. *See Brown v. Jones*, 255 F.3d 1273, 1280 (11th Cir. 2001) ("We have stated in numerous cases . . . that jurors are presumed to follow the court's instructions."). Therefore, Harris fails to show that the jury did not make an individualized determination as to each count. Harris does not show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his ineffective assistance of appellate counsel claim. He is not entitled to relief on Ground Four, Sub-Claim One.

### 2. Sub-Claim Two

Harris alleges that appellate counsel was ineffective for failing to argue that the trial court erred in denying his motion to continue the trial. On the day of trial, counsel moved for a continuance because she had only recently learned that a search warrant was executed at the apartment sometime after Harris's arrest. (Doc. 12-2, Ex. 1, Vol. 1, appellate record p. 41.) Counsel contended that the State had not provided any discovery about the search warrant. (*Id.*, pp. appellate record pp. 45-46.) Counsel argued that there were several individuals present at the apartment when it was searched who might have been known to law enforcement and who might have been present during the charged offenses, but that she had not been able to subpoena them. (*Id.*, appellate record pp. 41, 46-47.) She argued that such evidence might be relevant to Harris's defense to count thirteen, possession of a structure used for trafficking, sale, or manufacture of controlled substances. (*Id.*, appellate record pp. 47-48.) Counsel asserted that evidence about the warrant might show that other people were "coming and going" at the apartment, indicating that Harris was not in control of the residence, and that he was not the one dealing drugs on the charged occasions. (*Id.*) The trial court denied the motion to continue. (*Id.*, appellate record pp. 48-49.)

Harris raised this claim of ineffective assistance of appellate counsel in his Rule 9.141 petition. (Doc. 12-3, Ex. 5, pp. 21-30.) The claim that Harris contends appellate counsel should have raised was largely reliant upon state law governing continuance of trials. (*Id.*) To the extent Harris contends that appellate counsel should have raised the trial

23

court error as one of state law, this Court must defer to the state appellate court's decision on that underlying state law question. *See Pinkney*, 876 F.3d at 1295; *Callahan*, 427 F.3d at 932. The state appellate court's unelaborated denial of Harris's ineffective assistance of appellate counsel claim is presumed to have been on the merits. *See Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

To the extent that Harris contends that appellate counsel should have argued that a continuance was warranted because the prosecution's failure to disclose the search warrant violated his federal rights under *Brady v. Maryland*, 373 U.S. 83 (1963), he cannot obtain relief. Counsel did not allege a *Brady* violation in her argument to the trial court. (Doc. 12-2, Ex. 1, Vol. 1, appellate record pp. 41, 45-48.) Harris has not demonstrated that appellate counsel was ineffective for not raising an unpreserved argument. *See Diaz*, 402 F.3d at 1142; *Atkins*, 965 F.2d at 957.

Moreover, to the extent the state court applied *Brady* in ruling on Harris's ineffective assistance of appellate counsel claim, Harris cannot show that the decision was unreasonable. *Brady* holds that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." 373

U.S. at 87. To establish a *Brady* violation, a petitioner must show that "(1) the evidence at issue is favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence was suppressed by the State, either willfully or inadvertently; and (3) the defendant incurred prejudice." *Wright v. Sec'y, Fla. Dep't of Corr.*, 761 F.3d 1256, 1278 (11th Cir. 2014). The prejudice prong, "also referred to as the 'materiality prong,' is met when 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Id.* (quoting *Kyles v. Whitley*, 514 U.S. 419, 433 (1995)).

Harris does not show that any undisclosed information about the search warrant was favorable to him or was material. Harris does not specifically explain how any allegedly undisclosed evidence would have been helpful to his defense. Nor does he explain how he was prejudiced by not learning about the search warrant earlier. Harris merely theorizes that undisclosed evidence about a search warrant might have supported a defense to the count of possession of a structure used for trafficking, sale, or manufacture of controlled substances. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (stating that a petitioner's "unsupported allegations" that are "conclusory in nature and lacking factual substantiation" cannot sustain an ineffective assistance claim). Harris fails to show appellate counsel performed deficiently for failing to argue that the that the trial court erred in

denying a continuance based on *Brady*. Nor does Harris show that he was prejudiced by counsel's performance.

Accordingly, Harris does not show that the state appellate court's rejection of his claim was contrary to, or involved an unreasonable application of, *Strickland* or was based on an unreasonable factual determination. He is not entitled to relief on Ground Four, Sub-Claim Two.

### D. Ground Five: Ineffective Assistance of Trial Counsel[4]

#### 1. Sub-Claim One

Harris asserts that trial counsel was ineffective for failing to advise him "not to verbally introduce himself to the jury venire and/or object to the court's invitation for the Petitioner to verbally introduce himself to the jury." (Doc. 1, p. 18.)

When the jury panel entered the courtroom for jury selection, the trial court stated, "Let me have the parties stand up and introduce themselves to you." (Doc. 12-2, Ex. 1, Vol. 1, trial transcript p. 7.) After the attorneys introduced themselves, Harris said, "I'm Nygel Harris." (*Id.*) Harris contends that he has a distinctive voice and that when the jurors heard the audio recordings during trial, they would have recognized his voice from this

---

[4] Harris seeks an evidentiary hearing; his reply appears to narrow this request to his claims of ineffective assistance of trial counsel. The Court concludes that an evidentiary hearing is not warranted. *See Schriro*, 550 U.S. at 474 ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."). Harris also seeks the appointment of counsel and leave to conduct discovery, apparently in preparation for an evidentiary hearing. These requests are denied.

26

introduction. Harris argues that counsel should have advised him to remain silent and that counsel should have introduced him. Harris contends that counsel's alleged error resulted in a violation of his privilege against self-incrimination. (Doc. 1, p. 18.)

The state court denied Harris's claim. Initially, the state court noted that "it was the [trial] court who instructed the parties to introduce themselves." (Doc. 12-3, Ex. 11, appellate record p. 29.) The state court also cited Detective Hubbard's testimony that he conducted three face-to-face transactions with Harris and positively identified Harris. (*Id.*) Accordingly, the court found that Harris failed to establish either deficient performance by counsel or resulting prejudice. (*Id.*)

Harris does not show that the state court unreasonably denied his claim. As the state court noted, Detective Hubbard testified that he conducted each of the three transactions with Harris. (Doc. 12-2, Ex. 1, Vol. 2, transcript pp. 127-28.) Detective Hubbard testified that he saw a photograph of Harris before the first transaction and that he immediately recognized Harris the first time he entered the apartment. (*Id.*, transcript pp. 106, 108.) Detective Hubbard stated that he had no doubt as to Harris's identity. (*Id.*, transcript p. 128.) Given Detective Hubbard's testimony that Harris was the person who sold him drugs on each occasion, Harris does not show prejudice due to counsel's failure to object or advise him not to speak when the court asked the parties to introduce themselves.

27

Because Harris does not show that the state court's decision was contrary to, or involved an unreasonable application of, *Strickland* or included an unreasonable determination of the facts in denying his claim. He is not entitled to relief on Ground Five, Sub-Claim One.

### 2. Sub-Claim Two

Harris contends that trial counsel was ineffective for not moving to strike the jury panel after the panel heard him introduce himself. He claims that the jury panel "was tainted by exposure to prejudicial evidence that it otherwise would not have been able to rely on in reaching its verdict." (Doc. 1, p. 19.) The state court summarily denied this claim, stating, "the Court does not find that the motion would have been granted and therefore Defendant cannot establish deficient performance or prejudice." (Doc. 12-3, Ex. 11, appellate record p. 30.)

Harris has not shown that the state court unreasonably denied his claim. Harris does not show that hearing his voice compromised the prospective jurors' ability to serve fairly and impartially during trial. *See, e.g.*, *Hoskins v. State*, 965 So.2d 1, 13 (Fla. 2007) ("The purpose of voir dire is to 'obtain a fair and impartial jury, whose minds are free of all interest, bias, or prejudice' " (quoting *Ferreiro v. State*, 936 So.2d 1140, 1142 (Fla. 3d DCA 2006))); *Dippolito v. State*, 143 So.3d 1080, 1085-86 (Fla. 4th DCA 2014) (explaining that the entire jury panel should have been stricken after having a comment that "could have

28

prejudiced jurors in rendering their verdict", thus depriving the defendant of an impartial jury).

Harris does not show that the state court's decision was contrary to, or involved an unreasonable application of, *Strickland* or rested on an unreasonable determination of fact. He is not entitled to relief on Ground Five, Sub-Claim Two.

### 3. Sub-Claim Three

Harris argues that trial counsel was ineffective for failing to cross-examine Detective Hubbard and Detective Figueroa with Detective Figueroa's police report. Harris claims that the report provides that Detective Hubbard identified Harris as the suspect who sold both crack cocaine and cannabis on October 10, 2012. (Doc. 1, p. 20.) Such information is inconsistent with the detectives' trial testimony that an unknown male sold cannabis to Detective Hubbard on October 10, 2012. (*See* Doc. 12-2, Ex. 1, Vol. 2, transcript pp. 109-10, 184-86, 188.) Harris asserts that cross-examining the detectives with the report would have "create[d] additional reasonable doubt by highlighting the unreliable police investigation" and would have "undermine[d] the reliability" of the detectives' testimony. (Doc. 1, p. 20..) He contends that had the jury known of the statement in the police report, the jury would have "reject[ed] the testimony of the State's only eyewitness and thereby entertain[ed] reasonable doubt sufficient to warrant an acquittal." (*Id.*)

The state court denied Harris's claim, citing the trial testimony from both detectives that the CS purchased the cannabis from an unknown male on October 10, 2012. (Doc. 12-3, Ex. 11 appellate record p. 30.) The state court also referred to Detective Figueroa's trial testimony, noting his testimony that he "wrote the report in that manner because Defendant was the suspect in the case." (*Id.*) The state court also noted that a judgment of acquittal was granted on the counts involving the possession and sale of cannabis on October 10, 2012, and found that Harris did not establish either deficient performance or prejudice. (*Id.*)

Harris argues that the state court misconstrued Detective Figueroa's testimony. Harris correctly contends that the testimony about a report that the state court cited was about a property evidence form, not the arrest report. (Doc. 1, p. 21; Doc. 12-2, Ex. 1, Vol. 2, transcript pp. 187-88; Doc. 12-3, Ex. 11, appellate record p. 30.)

Despite the state court's confusion over which report Harris relied upon, there were multiple bases for the state court's decision, and Harris does not show that the state court's ruling was "based on" an unreasonable factual determination. *See* § 2254(d)(2). As the state court's order indicates, the detectives gave ample and clear testimony that an unidentified male sold cannabis on October 10, 2012.  Considering this repeated and consistent trial testimony, Harris has not shown that raising any conflicting notation in the arrest report would have affected the detectives' credibility. Accordingly, the state court did not

unreasonably conclude that Harris failed to show deficient performance by not cross examining the detectives about the arrest report.

Alternatively, even if the state court's ruling can be said to have been "based on" an unreasonable factual determination, Harris is not entitled to federal habeas relief even under de novo review. The police report does not support Harris's allegation of ineffective assistance. The report states that on September 13, 2012, police received information that a "street level dealer" identified as Harris "was selling cannabis and crack cocaine from an apartment" in Lake Wales. (Doc. 12-2, Ex. 1, Vol. 1, appellate record p. 6.) However, the report goes on to state that on October 12, 2012,[5] Detective Hubbard purchased crack cocaine from Harris and the CS purchased cannabis from an unknown male. (*Id.*). While the report states that "the suspect" was positively identified as Harris, the report is clear that it was an unknown male who sold the cannabis. (*Id.*, pp. 6-7.) The report does not state that Harris sold cannabis that day, or that Detective Hubbard identified Harris as selling cannabis that day. (*Id.*) Accordingly, Harris cannot show that counsel performed deficiently in not using this report to cross-examine the detectives, or that he was prejudiced by counsel's performance. Harris is not entitled to relief on Ground Five, Sub-Claim Three.

---

[5] This date appears to be a typographical error, as it is clear from the record that the transaction occurred on October 10, 2012.

### 4. Sub-Claim Four

Harris argues that trial counsel rendered ineffective assistance in cross-examining Detective Hubbard. Harris asserts that counsel elicited damaging testimony, thus "allowing the jury to consider presumptively prejudicial evidence during its deliberation." (Doc. 1, p. 22.) He also contends that counsel was ineffective for failing to depose Detective Hubbard because the allegedly harmful information would have been revealed at deposition "and counsel would have been prepared to ask questions that would not have elicited damaging evidence" before the jury. (*Id.*)

During trial, counsel asked Detective Hubbard questions confirming that Detective Hubbard had not personally met Harris prior to October 10, 2012. She asked Detective Hubbard whether the CS told police that drugs were at the apartment:

> Q. All right. So before you ever went to this location that the confidential source was taking you to - - because the confidential source is who told you all that there was drugs there, right?
>
> A. Detective Figueroa had known about this individual from his previous experience with Lake Wales and working in HIDTA.

(Doc. 12-2, Ex. 1, Vol. 2, transcript. 129.)[6]

---

[6] Detective Figueroa's testimony clarified that HIDTA was a task force of the Polk County Sheriff's Office and Lake Wales Police Department, and that the acronym stood for high intensity drug trafficking area. (Doc. 12-2, Ex. 1, Vol. 2, transcript pp. 155-56.)

Counsel moved for a mistrial, arguing that the answer was non-responsive and put bad character evidence and hearsay before the jury. (*Id.*, transcript pp. 129-30.) The trial court denied the motion for mistrial, finding that counsel invited the answer "when [she] got to the topic [she] brought up." (*Id.*, transcript p. 130.)

When Harris brought this ineffective assistance claim in his postconviction motion, the state court ordered a response from the State Attorney. The State Attorney agreed that Detective Hubbard did not answer the question, and argued that "[t]he fact that the Detective did not answer the question posed does not demonstrate any ineffectiveness on the part of trial counsel." (Doc. 12-3, Ex. 11, appellate record p. 86.) The State Attorney contended that counsel did not perform deficiently because she was reasonably questioning Detective Hubbard about the investigation, the non-responsive nature of the answer did not reflect on any ineffectiveness in answering the question, and counsel preserved the issue and moved on. (*Id.*, pp. 85-87.) The State Attorney also argued Harris could not show prejudice in the light of the overwhelming evidence of guilt. (*Id.*, appellate record p. 87.) The State Attorney further asserted that Harris's claim was too conclusory and speculative to warrant relief. (*Id.*)

The state court denied Harris's claim, stating that it agreed with the State Attorney's response and that it incorporated the response into its order. (*Id.*, appellate record p. 127.) Harris does not show that the state court unreasonably concluded that, because Detective

Hubbard's answer to the question was unexpected or unresponsive, counsel was not ineffective in asking the question of whether the CS told police that drugs were at the location. Nor does Harris demonstrate that the state court unreasonably found that Harris failed to show prejudice considering the State's significant evidence of guilt. Additionally, Harris has not established that the state court unreasonably concluded that this claim was speculative and conclusory. He can only theorize about what information would have been disclosed during a deposition. As the state court's order indicates, speculative and conclusory claims do not establish ineffective assistance of counsel. *See Tejada*, 941 F.2d at 1559. Harris does not show that the state court's order was contrary to, or involved an unreasonable application of, *Strickland* or was based on an unreasonable factual determination. He is not entitled to relief on Ground Five, Sub-Claim Four.[7]

### 5. Sub-Claim Five

Harris claims that trial counsel was ineffective in not filing a motion in limine, objecting, requesting a curative instruction, or moving for a mistrial when Detective

---

[7] To the extent Harris argues that the state court erred in not conducting an evidentiary hearing on his claim, or on any other claim he presents in his § 2254 petition, he cannot obtain federal habeas relief. *See Carroll*, 574 F.3d at 1365 ("[A] challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment—*i.e.*, the conviction itself—and thus habeas relief is not an appropriate remedy"); *Quince v. Crosby*, 360 F.3d 1259, 1262 (11th Cir. 2004) ("[W]hile habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief.").

34

Figueroa stated that four deals took place. During cross-examination, counsel questioned

Detective Figueroa about the CS:

> Q. Do you know how often the confidential source would hang out at that
> apartment in Lake Wales?
>
> A. Well, four deals were conducted.
>
> Q. Okay. Do you know if the person hung out there between deals?
>
> A. No, ma'am.

(Doc. 12-2, Ex. 1, Vol. 2, transcript pp. 191-92.)

Harris contends that the reference to "four deals" was a reference to an uncharged

incident that occurred on November 30, 2012. Harris claims that this testimony was

material to count thirteen, possession of a structure used for trafficking, sale, or

manufacture of controlled substances, because the State had to show that the property was

used for such a purpose "at frequent intervals."

The state court denied this claim, stating that it "found no reference" to the

November 30, 2012 transaction in its reading of the trial transcript. (Doc. 12-3, Ex. 11,

appellate record pp. 30-31.) Therefore, the state court found, Harris could not show

deficient performance or prejudice due to counsel's failure to file a motion in limine. (*Id.*,

p. 31.)

Harris contends that the state court unreasonably denied his claim because it "neglected to acknowledge Detective Figueroa's testimony that 'four deals were conducted.'" (Doc. 1, p. 27.) However, Detective Figueroa's isolated reference to "four deals" when answering questions about the CS was ambiguous and does not state that Harris was involved in a fourth deal. In addition, this Court has reviewed the trial transcript and, like the state court, finds no specific testimony as to an uncharged transaction on November 30, 2012.

Harris claims that the state court failed to address his arguments that counsel was ineffective in failing to object, request a curative instruction, or move for a mistrial when Detective Figueroa referred to "four deals." (*Id.*) The state court is presumed to have addressed these aspects of Harris's claim, and its finding that there was no reference to a November 30, 2012 incident implies there was no improper testimony that provided a basis for counsel to take the identified actions.[8] Harris does not show that the state court's

---

[8] Ordinarily, when a state court addresses some claims raised by a defendant, but not a claim that is later raised in a federal habeas proceeding, the federal habeas court presumes that the state court denied the claim on the merits. *Johnson v. Williams*, 568 U.S. 289 (2013). This presumption is rebuttable though, and de novo review of such a claim is appropriate when "the evidence leads very clearly to the conclusion that a federal claim was inadvertently overlooked in state court[.]" *Id.* at 303. Even assuming that the court did not rule on this part of Harris's claim, he fails to show entitlement to federal habeas relief under de novo review. As discussed above, the reference was vague and Detective Figueroa made no specific reference to another date or another transaction involving Harris. Harris fails to show that his counsel performed deficiently or a reasonable probability of a different outcome but for counsel's performance. *See, e.g.*, *Richter*, 562 U.S. at 105 ("Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.").

decision was contrary to, or involved an unreasonable application of, *Strickland* or that it unreasonably determined the facts in denying his claim. He is not entitled to relief on Ground Five, Sub-Claim Five.

### 6. Sub-Claim Six

Harris contends that trial counsel was ineffective for failing to file a motion in limine to exclude the presentation of evidence related to counts the State dismissed before trial, which involved the cocaine transactions on November 8, 2012, and December 5, 2012. Harris contends that counsel should not have "allowed the jury to consider inculpatory evidence of the dismissed charges and then later tell the jury there was no dispute that the crimes occurred and the items retrieved are drugs." (Doc. 1, p. 28.) He claims that because the substances were not tested, counsel should not have conceded the items were drugs. (*Id.*)

The state court denied Harris's ineffective assistance claim, finding "that evidence regarding transactions conducted on November 8 and December 5 were still relevant as counts 7 and 8 also dealt with the November 8 transaction and counts 11 and 12 involved the December 5 transaction." (Doc. 12-3, Ex. 11, appellate record p. 30.) Accordingly, the state court found that "any motion to exclude evidence regarding these transactions would have been denied." (*Id.*)

Harris contends that the state court unreasonably denied his claim because the evidence about the dismissed counts was not necessary or relevant to proving that the charged offenses occurred on those days, or to proving the elements of the charged offenses. (Doc. 1, p. 28.) However, whether an objection to the admissibility of certain evidence would have succeeded involves a determination of state evidentiary law. The state court unambiguously found that a motion to exclude the identified evidence would have been denied. This Court must defer to that application of state law in reviewing the state court's denial of Harris's ineffective assistance claim. *See Pinkney*, 876 F.3d at 1295; *Callahan*, 427 F.3d at 932.

Nor does Harris show that counsel was ineffective in conceding that the recovered substances were drugs. Harris cites the following portion of counsel's closing argument:

> During the course of the jury instructions, the Judge is going to read to you, and you will get a copy, it says the Government must prove a crime occurred. *And we believe a crime did occur, that law enforcement went to this home and got drugs from somebody.* The issue is was it the Defendant, was it Nygel Harris.

(Doc. 12-2, Ex. 1, Vol. 3, transcript p. 270) (emphasis added).

While not expressly addressed by the state court, this part of the claim is presumed denied on the merits. *See Williams*, 568 U.S. at 292-93 (holding that when a state court addresses "some of the claims raised by a defendant but not a claim that is later raised in a

federal habeas proceeding", a federal habeas court must presume (subject to rebuttal) that the state court denied the claim on the merits).[9] Harris does not show that the state court unreasonably applied *Strickland* or based its decision on an unreasonable determination of the facts. Counsel did not expressly concede any part of an uncharged offense, as Harris suggests. To the contrary, her statement indicates she was referring only to the charged offenses that "the Government must prove." Further, the State put on evidence that the drugs purchased by Detective Hubbard with respect to the charged offenses were identified as controlled substances either in the FDLE lab or based on the detectives' experiences.

Counsel could not refute that these transactions occurred, and considered in context, she simply acknowledged that fact before turning to the misidentification argument.[10] Under the circumstances, Harris does not show that the state court unreasonably applied *Strickland*. Nor does he show that the state court's ruling was based on an unreasonable factual determination. Harris is not entitled to relief on Ground Five, Sub-Claim Six.

---

[9] Even if the state court overlooked this part of Harris's claim and he is entitled to de novo review, he fails to show entitlement to relief for the same reasons discussed in this order. *See Williams*, 568 U.S. at 301-03 (explaining that de novo review is warranted when evidence clearly indicates that the state court overlooked the petitioner's federal claim); *see also Davis v. Sec'y, Dep't of Corr.*, 341 F.3d 1310, 1313 (11th Cir. 2003) (stating that when the state court fails to address a petitioner's federal claim, federal habeas review is de novo).

[10] In presenting the misidentification defense, counsel argued that the State did not produce evidence about phone calls between Detective Hubbard and the person selling drugs; the State presented no evidence that Harris ever had the money; the recordings were unclear; there was no photographic evidence about the offense; police did not know who else was in the apartment, who rented the apartment, or who stayed there; and that the "sloppy" nature of the State's investigation was illustrated when the State charged Harris with counts three and four even though the State's own witnesses clearly indicated he did not participate in those offenses. (Doc. 12-2, Ex. 1, Vol. 3, transcript pp. 269-73.)

### 7. Sub-Claim Seven

Harris alleges that trial counsel was ineffective for failing to raise an adequate objection to admission of State's Exhibit Four, for which Harris alleges that Detective Hubbard failed to "identif[y] and establish[ ] a predicate." (Doc. 1, p. 29.)

During Detective Hubbard's testimony, the prosecutor showed him State's Exhibits One through Five. (Doc. 12-2, Ex. 1, Vol. 2, transcript p. 111.) The prosecutor did not ask Detective Hubbard any questions about State's Exhibit Four. (*Id.*, transcript pp. 111-13.) Exhibit Four was introduced into evidence during Detective Figueroa's testimony. Detective Figueroa testified that it was in the same or substantially the same condition as when Detective Hubbard gave it to him after the transaction. (*Id.*, transcript pp. 162-63.) The trial court overruled counsel's objection on the bases of relevance and foundation, as well as inappropriate chain of custody. (*Id.*, transcript p. 163.)

It is not apparent from the transcript what State's Exhibit Four contained. The index to the transcript identifies State's Exhibit Four as cocaine. (Doc. 12-2, Ex. 1, Vol. 2, transcript p. 82.) However, the Court notes that there may be at least one error in the index. The index identifies State's Exhibit Two as cocaine, whereas Detective Hubbard identified State's Exhibit Two as cannabis. (Doc. 12-2, Ex. 1, Vol. 2, transcript pp. 82, 112.) Detective Figueroa's testimony that "it" was in substantially the same condition as

when Detective Hubbard gave it to him suggests that the exhibit was some type of illicit substance.

Harris's argument suggests that State's Exhibit Four was the cocaine connected to either the previously dismissed charges or the uncharged November 30, 2012 transaction.[11] Harris claims that counsel's objection on the bases of relevance and foundation, as well as inappropriate chain of custody, was inadequate and that counsel should have argued the exhibit was inadmissible because "it would result in unfair prejudice to the Petitioner." (Doc. 1, p. 29.) Harris claims this information "provided an evidentiary basis for the State to prove the frequency element of the possession of a structure charge (count 13)." (*Id.*)

The state court denied Harris's claim, finding that "counsel's objection was proper." (Doc. 12-3, Ex. 11, appellate record p. 31.) Harris does not show that the state court unreasonably denied relief under *Strickland* on the basis that counsel did make a "proper" objection on grounds of relevance, foundation, and inappropriate chain of custody.

Further, even assuming that a more detailed objection would have resulted in the exclusion of Exhibit Four, the State presented significant evidence of Harris's guilt, including on the charge of possession of a structure used for trafficking, sale, or manufacture of controlled substances, as discussed in Ground One*, supra.* Accordingly,

---

[11] Harris argues that "State's Exhibit #4 corroborated Detective Figueroa's testimony of a fourth transaction, a crime for which the Petitioner was not on trial." (Doc. 1, p. 29.)

Harris fails to show a reasonable probability of a different outcome even if the trial court had sustained counsel's objection. Harris has not shown that the state court's ruling involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination. He is not entitled to relief on Ground Five, Sub-Claim Seven.

### 8. Sub-Claim Eight

Harris claims that he is entitled to relief based on the cumulative effect of trial counsel's alleged errors raised in Ground Five, Sub-claims One through Seven. The state court denied this claim; at the time of its ruling, it had denied all but one of the identified claims, to which it directed the State Attorney to respond. (Doc. 12-3, Ex. 11, appellate record p. 31.) As only one of the identified claims remained outstanding, the state court's denial of relief based on cumulative error was not unreasonable. *See Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012) (stating that cumulative error claims require a court to examine any errors "in the aggregate"). Harris does not show that the denial of his claim was contrary to, or involved an unreasonable application of, clearly established federal law. Accordingly, Harris is not entitled to relief on Ground Five, Sub-Claim Eight.

### 9. Sub-Claim Nine

Harris argues that trial counsel was ineffective for not adequately challenging the sufficiency of the evidence that the offenses occurred within 1,000 feet of a church. Ira McCloud, the pastor at the church, testified that between the months of October and

December 2012, it was an active church that people attended. (*Id.*, transcript p. 197.) He testified that approximately 50 families attended and that the church meets every week. (*Id.*, transcript pp. 197, 199.) Harris claims that McCloud's "general testimony" was insufficient to prove that the church regularly conducted services that were religious in nature. (Doc. 1, p. 31.) *See* § 893.13(1)(e), Fla. Stat. (prohibiting the sale, manufacture, delivery, or possession with intent to sell, of controlled substances "in, on, or within 1,000 feet of a physical place for worship at which a church or religious organization regularly conducts religious services"). Therefore, Harris contends, counsel was ineffective for not raising this issue in moving for a judgment of acquittal on counts one, two, seven and eight.

The state court denied Harris's claim, finding it refuted by McCloud's testimony. (Doc. 12-3, Ex. 11, appellate record p. 31). Harris contends that the state court misconstrued his claim as merely asserting that there was no proof that the church was "active." Harris contends that his argument was that the State presented insufficient proof of the statutory requirement that the church regularly conducted religious services. (Doc. 1, p. 31.)

Harris does not show entitlement to relief because he cannot establish prejudice, much less that the state court's conclusion of no prejudice was an unreasonable application of *Strickland*. Harris fails to show that the State's evidence that the church was active and that 50 families "attended" it during the identified timeframe was insufficient to prove a

prima facie case such that he would have prevailed on a motion for judgment of acquittal. *See Boyd v. State*, 910 So.2d 167, 180 (Fla. 2005) ("A trial court should not grant a motion for judgment of acquittal 'unless the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law.'" (quoting *Lynch v. State*, 293 So.2d 44, 45 (Fla. 1974))); *Odom v. State*, 862 So.2d 56, 59 (Fla. 2d DCA 2003) ("A trial court should not grant a motion for judgment of acquittal unless the evidence, when viewed in a light most favorable to the State, fails to establish a prima facie case of guilt.").

Harris fails to show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim.[12] He is not entitled to relief on Ground Five, Sub-Claim Nine.

### 10. Sub-Claim Ten

Harris argues that trial counsel was ineffective "regarding the insufficiency of the evidence to prove offenses occurred within 1,000 feet of a church on October 10, 2012." (Doc. 1, p. 31.) Harris argues that McCloud's testimony that the church was active between the months of October 2012 and December 2012 was not specific enough to show that the church was an active church that was regularly conducting religious services on October

---

[12] Even assuming the state court misconstrued Harris's claim as he contends and therefore overlooked the claim as presented to it, a de novo review affords no federal habeas relief for the same reasons discussed in the body of this order. *See Williams*, 568 U.S. at 301-03; *Davis*, 341 F.3d at 1313.

10, 2012, when the first transaction occurred. Harris claims counsel should have moved for a judgment of acquittal on this basis on counts one and two, which involved the October 10, 2012 sale.

Harris raised this claim as part of ground nine of his postconviction motion. The state court is presumed to have denied this claim, even though it was not specifically analyzed in the state court's order. *See Williams*, 568 U.S. at 292-93. The state court did not unreasonably deny this claim.[13] Harris has not shown that McCloud's testimony that the church was "active" between the months of October and December of 2012 was insufficient to prove that the church regularly conducted religious services at the time of the October 10, 2012 offenses, such that a motion for judgment of acquittal would have succeeded. *See Boyd*, 910 So.2d at 180; *Odom*, 862 So.2d at 59.

Because Harris fails to show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim, relief is not warranted on Ground Five, Sub-Claim Ten.

### 11. Sub-Claim Eleven

Harris alleges that trial counsel was ineffective for cross-examining McCloud. Harris contends that cross-examination revealed that the church's denomination was

---

[13] Even assuming the state court did not rule on this claim and de novo review is warranted, the claim fails under *Strickland* for the same reasons stated in the body of this order. *See Williams*, 568 U.S. at 301-03; *Davis*, 341 F.3d at 1313.

Apostolic; that the church had been established in its location since 2006; and that the church meets every Sunday. (*See* Doc. 12-3, Ex. 1, Vol. 2, transcript pp. 197-99.) Harris argues that this testimony "assisted the State in proving its case or provided a factual basis for the jury to conclude that the church regularly conducted religious services at the time of the offenses[.]" (Doc. 1, p. 32.)

Harris raised this claim as part of ground nine of his Rule 3.850 motion, and it is deemed denied by the state court. *See Williams*, 568 U.S. at 292-93. Harris has not shown that the state court's decision was unreasonable. [14] Even if McCloud had not been cross-examined, the jury would have heard his testimony on direct examination that, between October and December of 2012, the church was active and that 50 families attended the church. Harris does not demonstrate that evidence required to prove an essential element of the relevant offenses was solely addressed on cross-examination. Accordingly, he has not shown a reasonable probably of a different outcome had the evidence before the jury been limited to McCloud's direct examination testimony.

Harris fails to show that the state court's decision involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination. He is not entitled to relief on Ground Five, Sub-Claim Eleven.

---

[14] Even if the state court failed to rule on Harris's claim and de novo review is therefore warranted, the claim would be denied as without merit on the bases discussed in this order. *See Williams*, 568 U.S. at 301-03; *Davis*, 341 F.3d at 1313.

### 12. Sub-Claim Twelve

Harris contends that trial counsel was ineffective "regarding lack of familiarity with the law, investigation, objective entrapment defense, disclosure of confidential informant, and severance." (Doc. 1, p. 33.) Harris contends that he had a viable objective entrapment defense to the charge of trafficking in oxycodone but that counsel failed to investigate this defense. In particular, he claims that even though he repeatedly refused to obtain and sell prescription drugs, "the confidential informant used the threat of taking her own life to secure a sale of oxycodone in a trafficking amount." (*Id.*, p. 34.) Harris claims that she was motivated to do so because she was paid "based on what kind of sales or purchases were made for each of the transactions." (*Id.*) Thus, Harris argues that the CS, operating as a state agent, engaged in such "outrageous and indecent" conduct as to amount to objective entrapment. (*Id.*) The state court denied this claim, finding that trial counsel did not perform deficiently and that Harris failed to show either deficient performance or prejudice. (Doc. 12-3, Ex. 11, appellate record p. 31.)

Two theories of entrapment, objective and subjective, are available in Florida. *See Jimenez v. State*, 993 So.2d 553, 555 (Fla. 2d DCA 2008). "Objective entrapment analysis focuses on the conduct of law enforcement. Objective entrapment operates as a bar to prosecution in those instances where the government's conduct 'so offends decency or a sense of justice' that it amounts to a denial of due process." *Davis v. State*, 937 So.2d 300,

47

302 (Fla. 4th DCA 2006) (quoting *State v. Blanco*, 896 So.2d 900, 901 (Fla. 4th DCA 2005). Objective entrapment occurs when "even a predisposed defendant's due process rights are violated." *Gennette v. State*, 124 So.3d 273, 277 n.5 (Fla. 1st DCA 2013). "A court must evaluate all relevant circumstances and then determine whether the government conduct" amounts to a due process denial. *Hernandez v. State*, 17 So.3d 748, 751 (Fla. 5th DCA 2009).

Harris points to an affidavit that he executed and attached to his Rule 3.850 motion. In the affidavit, Harris states that he had a romantic relationship with the CS in 2008, lost contact with her, but met with her again in September 2012. (Doc. 12-3, Ex. 11, appellate record p. 26.) In the affidavit, Harris stated that the CS often asked him for pills, but that he always told her he did not deal pills. (*Id.*) The affidavit states:

> I notice [sic] she still had depression problems and I though[t] they were worse th[a]n ever in December when she called talking about killing herself she really needed some Roxys, thinking of her kids losing the[ir] mom I got sucked into finding her some pills. I told her I didn't have the money to pay for them she said her sugar daddy (the undercover agent) would buy them if I just can find her some pills. I got her the pills only because she said she was going to kill herself.

(*Id.*, pp. 26-27.)

Harris cannot obtain relief. Harris does not allege that he told counsel about this information. And while Harris appears to claim that counsel could have obtained his

48

affidavit "and filed it with a motion for disclosure of the confidential source," the affidavit was dated in 2017, well after Harris's trial. (Doc. 1, p. 34; Doc. 12-3, Ex. 11, appellate record p. 27.) Thus, Harris cannot show that counsel was ineffective in not presenting an entrapment defense or moving to dismiss this charge based on entrapment. *See, e.g.*, *Chandler v. United States*, 218 F.3d 1305, 1318 (11th Cir. 2000) ("Because the reasonableness of counsel's acts (including what investigations are reasonable) depends 'critically' upon 'information supplied by the [petitioner]' or '[the petitioner]'s own statements or actions,' evidence of a petitioner's statements and acts in dealing with counsel is highly relevant to ineffective assistance claims." (quoting *Strickland*, 466 U.S. at 691)).

In addition, the affirmative defense of entrapment ordinarily requires a defendant's concession to having committed the offense. *See State v. Freeman*, 796 So.2d 574, 577 (Fla. 2d DCA 2001) ("The general rule, subject to limited exceptions, is that a defendant who denies committing the crime cannot claim entrapment as a defense."). Therefore, the defense of entrapment would have been inconsistent with the defense presented, which was that the State presented insufficient evidence of Harris's identification. Harris does not show that, even if counsel had known of this information, she was ineffective for declining to offer inconsistent defenses. *See Chandler*, 218 F.3d at 1319 ("Counsel is not required to present every nonfrivolous defense. . . . Considering the realities of the courtroom, more is not always better. Stacking defenses can hurt a case. Good advocacy requires 'winnowing

out' some arguments, witnesses, evidence, and so on, to stress others."); *see also Johnson v. Alabama*, 256 F.3d 1156, 1181 (11th Cir. 2001) (explaining that, while alternative defenses may be raised, "competent trial counsel know that reasonableness is absolutely mandatory if one hopes to achieve credibility with the jury" and finding that presenting an alternative defense in Johnson's case "might well have undercut the credibility of Johnson's lawyers with the jury.") (internal quotation marks and citation omitted).

Apparently recognizing this issue, Harris appears to argue that if counsel had investigated entrapment, counsel could have argued that severance of offenses was warranted so that he could present inconsistent defenses at different trials. Again, Harris does not state that he told counsel of the relevant facts before trial. Therefore, he does not show that counsel performed deficiently. *See Chandler*, 218 F.3d at 1318. Nor does Harris show a reasonable probability that the trial court would have granted his motion to sever if counsel raised this assertion. Considering the prosecution's successful argument that the charges involved one pattern of conduct and that evidence of each transaction was relevant to establishing Harris's identity and control over the apartment, Harris fails to show that a motion for severance would have been granted on the identified basis.

Harris does not show that the rejection of his claim involved an unreasonable application of Strickland or was based on an unreasonable factual determination. Harris is not entitled to relief on Ground Five, Sub-Claim Twelve.

50

## V. <u>CERTIFICATE OF APPEALABILITY</u>

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Instead, a district court or court of appeals must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a COA, Harris must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Harris has not made the requisite showing. Finally, because Harris is not entitled to a COA, he is not entitled to appeal in forma pauperis.

It is therefore **ORDERED** that Harris's Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**. The **CLERK** is directed to enter judgment against Harris and in Respondent's favor and to **CLOSE** this case.

ORDERED in Tampa, Florida, on September 28, 2021.

Kathryn Kimball Mizelle
United States District Judge

51